IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INDEPENDENCE FEDERAL SAVINGS
BANK,

        *Plaintiffs*,

v.

1225 CONNECTICUT CO. LLC, *et al.*

        *Defendants*.

Civil Action No. 08-963 (JDB)

## DEFENDANTS' OPPOSITION TO MOTION FOR REMAND

Defendants 1225 Connecticut Co LLC ("1225") and Davis Construction Services, LLC ("DCS"), by and through their attorneys, hereby oppose Plaintiffs' Motion for Remand and the Motion for Costs and Attorneys Fees. The instant case was properly removed from the Superior Court of the District of Columbia once non-diverse co-plaintiff Stanley W. Parsons ("Mr. Parsons") was involuntarily dismissed on June 2, 2008 by that court, thereby confirming Mr. Parsons' improper/fraudulent joinder.

I.     BACKGROUND

This Court is, no doubt, all too familiar with this case. It started out in this Court on July 31, 2007, as a diversity case by Plaintiff Independence Federal Savings Bank ("IFSB") (a District of Columbia bank) against 1225 (a Delaware chartered limited liability company) for breach of an office lease and breach of the implied covenant of quiet enjoyment allegedly caused by substantial renovation work ("Repositioning Project") being performed by 1225 at the building at 1225 Connecticut Avenue, N.W., Washington, DC (the "Premises"), where IFSB

maintains its home office.  In conjunction with the Complaint, IFSB moved for a preliminary injunction to shut down construction until its lease terminated at the end of 2010.  Shortly after this Court denied that motion, IFSB filed a Stipulation of Voluntary Dismissal Without Prejudice on September 24, 2007.

The following month, the case resurfaced, this time in the form of a complaint filed in the Superior Court of the District of Columbia ("Local Suit") (See Exhibit A[1] to Notice of Removal). No doubt in an attempt to destroy diversity, the Local Suit named as a new plaintiff Mr. Parsons, described as a Virginia resident and IFSB employee since 2001 at the 1225 Connecticut Avenue location, and the complaint also named as a new defendant Virginia limited liability company DCS, which is mistakenly identified as the general contractor on the Repositioning Project. Counts I and III of the Local Suit were merely reiterations of the counts of the original federal suit, with the exception that Mr. Parsons was added as a claimant and DCS as a co-defendant regarding the alleged breach of the implied covenant of quiet enjoyment.  The new counts added were Count II, a third party beneficiary claim of Mr. Parsons against 1225 for breach of contract (to-wit, the Lease between IFSB and 1225); Count IV, a nuisance claim by both plaintiffs against both defendants, and Count V, a claim of negligence by both plaintiffs against DCS.

On November 16, 2007, Defendants filed a Notice of Removal based on improper joinder of the non-diverse parties, namely Parsons and DCS, and, shortly thereafter, Plaintiffs filed a motion for remand.  By Order dated January 7, 2008, this Court granted Plaintiffs' motion and remanded the case to Superior Court.  See Exhibit D.  With respect to the claims of Mr. Parsons, this Court concluded that there was a possibility that his claims could survive a motion to dismiss

---

[1]    All references to Exhibits herein, unless otherwise noted, are to those exhibits attached to Defendants' Notice of Removal.

making remand appropriate and that, in any event, it was more properly within the province of the Superior Court to determine whether Parsons' claims must be dismissed for failure to state a claim upon which relief can be granted. *Id.* at 5.

Defendants quickly pursued that course of action and filed with the Superior Court a Motion to Dismiss, Or In the Alternative, For Summary Judgment in which they sought dismissal of all the Parsons' claims and all claims against DCS. The Superior Court, Judge Jeanette J. Clark presiding, did not grant relief in favor of DCS because it concluded that there was a genuine issue of material fact as to whether DCS was a proper party and that IFSB was entitled to discovery (Exhibit E at 8). As to Mr. Parsons, however, the Court, after examining District of Columbia law and the terms of the Lease, held that Mr. Parsons was not an intended beneficiary. The court dismissed all of his claims and eliminated him as a party on June 2, 2008. *Id.* at 9-10.[2] With the dismissal of Mr. Parsons, diversity was restored prompting Defendants to file their Notice of Removal on June 5, 2008.

---

[2]    Plaintiffs apparently misapprehend the extent of Judge Clark's order. In this regard, while on one hand Plaintiffs acknowledge that "the Superior Court dismissed claims against [sic] Parsons" (Plaintiffs' Memorandum of Points and Authorities ("Pls' Memo") at p. 4, n.4), on the other hand Plaintiffs suggest that the denial of summary judgment on Counts III (breach of implied covenant of quiet enjoyment), IV (nuisance), and V (negligence) may indicate an intent on the part of Judge Clark to leave Parsons' claims on those counts unaltered. *See, e.g.*, Pls' Memo at p. 7 ("there is no basis to find that the Superior Court intended to dismiss Parsons as a Plaintiff"), p. 8 ("The Superior Court declined to grant summary judgment on Count III without mentioning Parsons or IFSB one way or the other. . . . There is no indication that Parsons' claim for breach of quiet enjoyment is treated any differently that IFSB's claim"), and p. 9 ("There is no indication that Parsons' claim for nuisance is treated any differently than IFSB's claim. . . . Again the Superior Court did not mention either Parsons or IFSB one way or the other."). In essence, what Plaintiffs argue is that because Mr. Parsons was not mentioned by Judge Clark in that portion of her opinion addressing Counts III-V, she created uncertainty as to her ruling on those counts as applied to Mr. Parsons.

What Plaintiffs fail to comprehend is that prior to launching into her discussion of Counts III-V, Judge Clark made it clear that she was eliminating all of Mr. Parsons' claims and was also therefore eliminating him as a party. See Order at 9-10 "Defendants' Motion to Dismiss Plaintiff Parson's claims against them was granted by Court Order dated June 2, 2008. [H]erefore, summary shall be granted as to Count II of the Complaint." (Emphasis added). The Order therefore provided that "the Motion to Dismiss Plaintiff Parsons is GRANTED for the reasons stated above[.]" *Id.* at 11. Thus, there was no reason to reference Mr. Parsons in connection with the remaining counts -- the Court had already dispensed with his claims. Instead, the Court, in its summary judgment discussion of

II.    THE INSTANT CASE IS REMOVABLE DESPITE THE FACT THAT THE NON-DIVERSE PLAINTIFF WAS INVOLUNTARILY DISMISSED.

A.    STANDARD TO BE APPLIED.

Defendants filed their Notice of Removal pursuant to 28 U.S.C. § 1446(b) which provides, in pertinent part, as follows:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

Relying primarily on the cases of *Higgins v. E.I. DePont De Nemours & Co.*, 863 F.2d 1162 (4th Cir. 1988) and its progeny, *e.g.*, *Pulse Once Communications, Inc. v. Bell Atlantic Mobile Systems, Inc.*, 760 F.Supp. 82 (D. Md. 1991), IFSB argues that the case may not be removed under 28 U.S.C. § 1446(b), because, as judicially interpreted,[3] involuntary orders of dismissal by state courts are not the type of orders that make the case removable. See Plaintiff's Memo at p. 10 ("The June 2nd Dismissal Summary Judgment Order, even to the extent that it extinguished all of Parsons' claims, would be subject to the voluntary-involuntary rule, and subject to reversal by the District of Columbia Court of Appeals."). The Fourth Circuit's

---

Counts III-V, focused on those claims that remained after dismissal of Parsons, namely IFSB's claims. *See, e.g.*, Order at p. 10 ("Defendants argue Plaintiff 'IFSB has no cause of action in nuisance.'"). With that predicate, it is clear that Judge Clark's reference to "this alleged interference in Plaintiffs' use and enjoyment" later in her discussion of that same Count IV is, at most, a misplaced apostrophe (just like the misplaced apostrophe on p. 9 of the Order where she refers to "Parson's claims") rather that any expression of any intent to leave Mr. Parsons' Count IV claim viable. The other language Plaintiffs attempt to seize upon (Pls' Memo at p. 8) was merely Judge Clark quoting Plaintiffs' arguments -- nothing more.

[3]    The statute itself makes no distinction between voluntary and involuntary dismissals, but simply refers, *inter alia*, to an "order."

statement on this issue is found in dicta[4] in the _Higgins_ case.  In _Higgins_, parents whose fetuses

allegedly died from the effects of chemicals in a Baltimore fire engine paint brought a personal

injury suit against the supplier and manufacturer of the paint, as well as the City of Baltimore.

As soon as the city (the non-diverse defendant) was dismissed from the case on governmental

immunity grounds, the remaining defendants removed the case to federal court where eventually

summary judgment was entered in their favor.  In affirming the judgment of the trial court, the

Fourth Circuit discussed removal as follows:

> Diversity must be established at the time of removal.  Even
> so, a case may nevertheless not be removable depending on
> whether the non-diverse party is eliminated from the state
> action by voluntary or involuntary dismissals.  _See, Heniford
> v. American Motor Sales Corp., 471 F. Supp. 328, 334-35_ (D.
> S.C. 1979).  If the plaintiff voluntarily dismissed the state
> action against the non-diverse defendant, creating complete
> diversity, the state action may be removed because there is no
> risk that diversity will be destroyed later on.  The voluntary
> act has demonstrated the plaintiff's desire not to pursue the
> case against the non-diverse party.  However, this is not the
> situation if the non-diverse party has been involuntarily
> dismissed by order of the state judge.  The plaintiff may
> choose to appeal the dismissal.  Although complete diversity
> may temporarily exist between the parties, suggesting removal
> is proper, diversity may ultimately be destroyed if the state
> appellate court reverses the dismissal of the non-diverse party.
> Therefore, some cases are not removable despite complete
> diversity between the parties.

_863 F.2d at 1166_.[5]  Nonetheless, the court admitted that "disagreement exists whether the

involuntary/voluntary distinction survived the 1949 amendment to § 1446" wherein Congress

---

[4]     The language _Higgins_ is dicta because although the court stated the case "may" have been improperly removed,
it did not explicitly hold such, instead upholding the jurisdiction of the trial court because plaintiff failed to object to
removal in the first place and because diversity still existed at the time summary judgment was entered.  _863 F.2d at
1166_.

[5]     _Pulse One_, relied upon by IFSB, also follows the voluntary/involuntary distinction relying solely on the _Higgins_
dicta.  _760 F.Supp. at 63_.

added the language allowing for removal after orders from which it may first be ascertained that

the case is one which is or has become removable. An example of the "disagreement" can be

found in cases such as *Platt v. Illinois Central Railroad Company, 305 F.2d 136 (5th Cir. 1962)*,

in which the court acknowledged the value of having the sufficiency of claims against non-

diverse parties decided in state court prior to removal:

> The sufficiency of the pleadings must be tested in the state
> court where the suit is filed. If, in this case, that results in a
> decision of the State Court that the suit should be dismissed as
> to Ellington [the non-diverse defendant], the case then
> becomes removable to the Federal Court under the statute
> authorizing removal of cases of this character where the
> plaintiff and defendant are not residents of the same state.

*Id. at 139* (citation omitted).[6] None of the federal courts of the District of Columbia have opined

on the issue. However, whether or not the District of Columbia Circuit Court of Appeals

endorses the voluntary/involuntary distinction or not, the instant case is still removable.

Even in jurisdictions that have endorsed the voluntary/involuntary distinction,

including the Fourth Circuit (*Pulse One* notwithstanding), an exception is recognized in those

instances involving improper or fraudulent joinder. A prime example of this principle is the case

of *Poulos v. NAAS Foods, Inc., 959 F.2d 69 (7th Cir. 1992)* -- a case repeatedly endorsed by

Plaintiffs. See Pls' Memo at p. 13, n.14, p. 14, p. 15 and p. 17, n.16. In *Poulos*, the defendant

company removed the case once the non-diverse owner of the company was granted summary

judgment by the state trial court. The federal trial court ultimately dismissed the case against the

remaining defendant and, on appeal, the plaintiff argued that removal was improper because it

---

[6]    As previously noted, this sentiment concerning the sufficiency of the pleadings was one also apparently shared
by this Court. See Exhibit D to Notice of Removal at 5 wherein it stated that the decision whether Plaintiffs' claims
fail to state a cause of action upon which relief can be granted "should be made by the D.C. Superior Court."

was based on an involuntary state court order. The Seventh Circuit affirmed the removal

because the joinder of the corporate owner was fraudulent and plaintiffs had no chance of

recovering from that party. In this regard, the court, while acknowledging the

voluntary/involuntary distinction, also held that where the dismissal of a non-diverse defendant

is involuntary, the case nonetheless may be removed if the defendant can show that joinder was

fraudulent. The court expressed the standard as follows:

> An out-of-state defendant who wants to remove must bear a
> heavy burden to establish fraudulent joinder. The defendant
> must show that, after resolving all issues of facts and law in
> favor of the plaintiff, the plaintiff cannot establish a cause of
> action against the in-state defendant. At that point of decision,
> the federal court must engage in an act of prediction: is there
> any reasonable possibility that a state court would rule against
> the non-diverse defendants? <u>If a state court has come to
> judgment, is there any reasonable possibility that the judgment
> will be reversed on appeal?</u>

*Id.* at 73 (Emphasis added) (footnote omitted). Applying the latter standard, the Seventh Circuit

held that the trial court was correct in concluding that under Wisconsin law the defendant's

parent company was properly dismissed and that accordingly the allegations of the complaint

gave plaintiff no chance of recovery in a Wisconsin court, thereby establishing fraudulent

joinder.[7]

Application of this same principle can be found in the Fourth Circuit in the case

of <u>*Lewis v. Armstrong Steel Erectors, Inc.,*</u> *992 F.Supp. 842 (S.D. W.Va. 1998).* In that case, the

---

[7]    The Fifth Circuit has also recognized this exception to the voluntary/involuntary rule. In the case of <u>*Crockett v.
J.R. Reynolds Tobacco Co.,*</u> *436 F.3d 529, 532 (5th Cir. 2006),* the court stated as follows:

> Courts have long recognized an exception to the voluntary/involuntary rule where a claim against
> a non-diverse or in-state defendant is dismissed on account of fraudulent joinder. Fraudulent
> joinder can be established by demonstrating either "(1) actual fraud in the pleading of
> jurisdictional facts, or (2) <u>inability of the plaintiff to establish a cause of action against the non-
> diverse party in state court.</u>" (Emphasis added) (footnote omitted).

personal representative of a deceased ironworker brought a cause of action in state court against

a general contractor, a subcontractor and the only non-diverse defendant, the West Virginia

Department of Transportation, Division of Highways ("WVDOH").  After WVDOH's motion to

dismiss was granted, the remaining defendants removed the case to federal court whereupon

plaintiff moved to remand the case to state court because the dismissal of WVDOH was

involuntary.  In denying the motion for remand, the court stated as follows:

> Plaintiffs allege removal was improper because WVDOH was
> involuntarily dismissed by the state court.  It is well
> established that "if the dismissal is voluntary, the action may
> be removed; if involuntary, removal is improper."  _Arthur v._
> _E.I. DuPont_, 798 F. Supp. 367, 368 (S.D. W.Va. 1992)
> _(Haden, C.J.)_.  Defendants do not contest that WVDOH was
> involuntarily dismissed.  In _Arthur_, this Court also stated,
> however, "a claim of fraudulent joinder is a 'well established
> exception to the voluntary-involuntary rule.'"  _Id_. at 369.
> (Citation omitted).  Because Defendants allege fraudulent
> joinder, the Court turns next to that issue.

_Id_. at 844  The standard then applied by the _Lewis_ court was "whether there is any reasonable

possibility that the judgment of the circuit court . . . will be reversed on appeal.  _Id_.  Applying

that rule, the court denied the motion to remand.

        Application of the same principle is also found in decisions of the Sixth Circuit.

For example, in _Wiacek v. Equitable Life Assurance Society of the United States, 795 F.Supp._

_223(E.D. Mich. 1992)_, the plaintiffs argued that their case was improperly removed after a non-

diverse municipal defendant was involuntarily dismissed from the case.  While acknowledging

the voluntary/involuntary distinction, the court nonetheless noted that the fact that "the dismissal

was involuntary does not, alone, determine the outcome of plaintiffs' motion to remand" because

"a successful claim of fraudulent joinder overcomes the effect of the voluntary/involuntary rule."

*Id.* at 226.  The court explained its reasoning as follows:

> In essence, a successful fraudulent joinder claim functions as an exception to the exception; that is, if defendants can show that the City of Westland was fraudulently joined, then removal is permitted under § 1446, regardless of whether the dismissal was voluntary or involuntary.  The fraudulent joinder "exception to the exception" makes sense because, for purposes of establishing federal jurisdiction, a fraudulently joined defendant is <u>completely</u> disregarded.

*Id.* (citation omitted).  Given that the court was faced with a situation, as in the instant case, where the non-diverse party was dismissed by the state court before removal, the federal court applied the standard of "whether there is any reasonable possibility that the state court order dismissing the non-diverse defendant will be reversed or vacated on appeal" thus adopting the *Poulos* approach.  *Id*.  The district court went on to conclude that defendants met their burden of proving fraudulent joinder because a "sore lack of legal foundation for the claims against the City and the virtually non-existent factual basis for the claim lead the Court to the conclusion that the City was frivolously and fraudulently joined to defeat diversity jurisdiction." *Id.* at 226).[8]

Another decision of note out of the Sixth Circuit is *Ennis v. Queen Insurance Company of America, 364 F.Supp. 964 (W.D. Tenn. 1973)*, in which the trial court denied plaintiff's motion to remand even though the basis for removal was the involuntary dismissal of a non-diverse defendant.  In so holding, the court states as follows:

> Though the Court is not sympathetic to the reasons for the distinction between voluntary and involuntary dismissals as

---

[8]    The court cited as additional support for its finding plaintiffs' failure to appeal the state court's order of partial dismissal.  *Id. at* 226.

> affecting the right to removal, it does appear that the clear weight of authority is to the effect that removal is not appropriate where the resident defendant was involuntarily dismissed, <u>except</u> where a party is merely added in order to defeat federal jurisdiction.
>
> If a local party were joined on a basis purposefully to avoid federal jurisdiction or if a formal or unnecessary party were joined for that reason, then the federal court may retain removal jurisdiction.  "The joinder of a resident Defendant may be deemed fraudulent for purposes of removal if the Plaintiff fails to state a cause of action against the resident Defendant and the lack of a cause of action is obvious according to the settled decisions of laws of the state."

*Id.* at 967-68 (Citations omitted).  See also *Hardy v. Ajax Magnathermic Corp., 122 F.Supp. 2d 757 (W.D. Ky. 2000)* (Removal permitted after non-diverse defendant was granted summary judgment in state court where dismissed party was fraudulently joined.).

An example out of the Ninth Circuit of removal after an involuntary state court order dismissing non-diverse defendants is found in the case of *Preaseau v. Prudential Insurance Co., 591 F.2d 74 (9th Cir. 1979)*.  In that case, diversity was initially destroyed by the presence of in-state Doe defendants.  However, when those non-diverse defendants were involuntarily dismissed by the state court at a pretrial conference, the remaining defendant removed the case to federal court and the trial court denied plaintiff's motion to remand and held that the defendant acted properly in removing the case once the state court dismissed the non-diverse defendants.

Further examples of removal permitted after a non-diverse party was involuntarily dismissed in state court can also be found in the Eleventh Circuit in the case of *Insinga v. LaBella, 845 F.2d 249 (11th Cir. 1988)*, wherein a case was removed from state court after a non-diverse defendant was dismissed.  In denying the motion for remand, the court stated as follows:

> Fraudulent joinder is a well-established exception to the voluntary-involuntary rule.  In order to sustain a fraudulent

> joinder, a state court must find either that there was no
> possibility that the plaintiff could prove a cause of action
> against the resident defendant or that the plaintiff fraudulently
> pled jurisdictional facts in order to subject that resident
> defendant to the jurisdiction of the state court.  For all intents
> and purposes, a trial court's finding that it lacks jurisdiction
> over a resident defendant is akin to a finding of fraudulent
> joinder of that defendant in that it involves a determination by
> the court that the resident defendant was never properly before
> the court, rather than a determination that the court had
> jurisdiction of that defendant but that the case against him,
> although not frivolous, was not meritorious.

*Id.* at 254-55 (Citation and footnote omitted).

In light of the foregoing cases, Defendants submit that the weight of authority, even in jurisdictions that maintain the voluntary/involuntary distinction under § 1446(b), recognizes an exception to the rule when the non-diverse party involuntarily dismissed by the state court was fraudulently joined, and that to determine whether fraudulent joinder occurred, the federal court should determine whether there is any reasonable possibility that the judgment of the state court will be reversed on appeal.

B.    THE FACTS OF THIS CASE ESTABLISH FRAUDULENT JOINDER AND THERE IS NO REASONABLE POSSIBILITY THAT JUDGE CLARK'S ORDER WILL BE REVERSED.

Applying that standard to the instant case, it is clear that there is no reasonable possibility that Judge Clark's decision will be reversed by the District of Columbia Court of Appeals and that removal is therefore supported by fraudulent joinder.  In this regard, Mr. Parsons' claims were based on the premise that he is an employee of IFSB at the Premises and therefore is an intended beneficiary of the Lease between IFSB and 1225 (and its predecessors in interest).  For example, paragraph 62 of the Complaint alleges that "Plaintiff Parsons is an intended third party beneficiary of the quiet enjoyment covenants of the Lease and Lease Amendment" and also any implied covenant of quiet enjoyment.  See Complaint paras. 62, 67.

Judge Clark, relying primarily on the recent District of Columbia Court of Appeals decision in *Fort Lincoln Civic Association v. Fort Lincoln New Town Corp.* 944 A.2d 1055, 1064 (D.C. 2008), held that even though Mr. Parsons, as an IFSB employee could benefit from some of the promises of the Lease, he nonetheless was nothing more than an incidental beneficiary and his claims against Defendants therefore were dismissed.  See Notice of Removal, Exhibit E at 9-10. Even a cursory examination of the *Fort Lincoln* case and the Lease readily confirms the wisdom of Judge Clark's order and firmly establishes that there is no reasonable possibility that her decision will be reversed on appeal.

In *Fort Lincoln* a civic association representing residents of an urban renewal area brought claims, *inter alia*, for breach of contract and negligence against a developer for breach of a land disposition agreement ("LDA") entered into between the developer and the District of Columbia Redevelopment Land Agency.  By virtue of the agreement, the agency sold land to the developer in exchange for payment plus certain undertakings concerning the development of the land.  The association claimed that the developer breached certain of those undertakings which were intended to benefit the residents and that the residents (which the association represented) were intended third party beneficiaries of the agreement and entitled to enforce its provisions. The Court determined that the residents were merely incidental beneficiaries and not intended beneficiaries because, *inter alia*, the agreement did not single out the residents as intended beneficiaries, reflect an express or implied intention to benefit the residents directly, nor reflect the parties' intention to confer on the residents a right to enforce the agreement.  In making that holding, the Court stated as follows:

> In short, we do not read the LDA as conveying a promise
> by the Redeveloper, specifically earmarked for the Civil

> Association or the individual appellees here, to perform any
> specific duty for these particular appellants or residents of Fort
> Lincoln.  Even though appellants might benefit from some of
> the promises made by the Redeveloper, those promises would
> not then make them intended beneficiaries.  Rather appellees
> are incidental beneficiaries, part of the public and the 16,000
> residents of the Fort Lincoln community who might realize
> some benefit from implementation of the LDA.

*Id. at 1067* (Citations omitted).  Not only did the court uphold the dismissal of the breach of

contract claims asserted by appellants, but it also affirmed the trial court's dismissal, on

summary judgment, of appellants' common law claims, including negligence, because such

claims were merely an "impermissible re-characterization of the breach of contract claim."  *Id. at*

*1070* (Citation omitted).

Mr. Parsons is no more than an incidental beneficiary and several provisions of

the Lease support the conclusion that he and other IFSB employees were not intended third party

beneficiaries.  First, there is no mention of the term "employee(s)" or the name Parsons in the

Lease.  While this is not dispositive on the issue of intended third party beneficiaries, it does

require Parsons to point to specific language in the Lease that demonstrates that same was made

for his benefit.  Second, the Lease defines the Tenant as "Independence Federal Savings Bank"

and not "IFSB and any and all of its employees."  See, Exhibit A to Complaint, Lease at p. 1

(defining "Tenant" as "INDEPENDENCE FEDERAL SAVINGS BANK, a District of Columbia

corporation….").  Clearly, the parties to the Lease, 1225's predecessor in interest and IFSB, were

negotiating the obligations that each had to each other, and not to IFSB's employees.  Finally, an

examination of Paragraph 41.10 of the Lease further supports the contention that Parsons is

nothing more than an incidental beneficiary of the Lease.  Paragraph 41.10 provides:

13

> The covenants, conditions and agreements contained in this
> Lease shall bind and inure to the benefit of the Landlord and
> Tenant and their respective heirs, distributees, executors,
> administrators, successors, and except as otherwise provided
> in this Lease, their assigns.

See, Exhibit A to Complaint, Lease at p. 44, para. 41.10.  This paragraph clearly defines the

intended beneficiaries of the Lease – namely 1225 and IFSB.  Had it been the parties' intention

to have the Lease provisions "inure to the benefit" of IFSB's employees, the same would have

been so specifically provided in this provision.  Moreover, according to the Complaint (para. 3),

Mr. Parsons did not even begin his employment with IFSB until June 2001, so he could not

possibly have been an intended beneficiary of a Lease that was entered into on December 16,

1988, and amended on April 25, 2001.  Complaint at paras. 6 and 12.  Throughout the litigation

of this case, both in this Court and in Superior Court, including Plaintiffs' instant Motion to

Remand, Plaintiffs have failed to cite any contrary provisions.  Such a failure, however, is not

surprising because, as noted, there are no provisions in the Lease which support a conclusion that

Mr. Parsons is an intended beneficiary.[9]  Parsons' other claims of nuisance and negligence are

merely derivative of his contract and covenant claims and were properly dismissed because each

is an "impermissible recharacterization of the breach of contract claim," just as the negligence

claim was in _Fort Lincoln_.[10]

---

[9]    Authority from other jurisdictions, has found that an employee of a tenant is not an intended beneficiary under a lease.  See _Castelvetro v. Mills, 1994 Conn. Super. LEXIS 270 (Ct. Super. Ct. 1994)_; _Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 676 N.E. 2d 821 (Mass. 1997)_; _Wood v. Centermark Properties, Inc., 984 S.W. 2d 517 (Mo. App. 1998);_ and _Deeter v. Dull Corp., 617 A.2d 336, 341 (Pa. Super. 1992)._  Throughout the litigation of this case in this Court and Superior Court, IFSB has failed to produce any authority from any jurisdiction holding that an employee of a tenant is an intended third party beneficiary of a commercial lease.

[10]    Defendants also argued in their motion to dismiss that the nuisance claim failed to state a cause of action because no property rights of Parsons were effected.  _See, e.g.,_ Document 4-5 to Motion for Remand at 14-15.  If anything, the discovery produced by Plaintiffs in Superior Court confirmed that conclusion.  See, e.g., Exhibit H, hereto, Plaintiff Stanley W. Parsons' Answer to First Set of Interrogatories, Answers 8 and 12 in which Parsons

In light of the allegations of the Complaint, the record in this case, and the case law of the District of Columbia, including the 2008 decision of the District of Columbia Court of Appeals in the *Fort Lincoln* case, it must be concluded that there is no reasonable possibility that the June 2, 2008 order of dismissal of Judge Clark will be reversed on appeal and Defendants have therefore established that the joinder of Mr. Parsons was fraudulent.[11]

Accordingly, regardless of whether or not this Court adopts the rule that an involuntary dismissal of a non-diverse party by a state court typically does not provide grounds for removal under 28 U.S.C. § 1446(b), such rule does not apply in this case due to the fraudulent joinder of Mr. Parsons.

III.    PLAINTIFFS ARE NOT ENTITLED TO ATTORNEY FEES

Plaintiffs, invoking 28 U.S.C. § 1447(c), seek an award of $8,162.00 in attorneys fees they allege they incurred on their Motion to Remand.  Pls' Memo at 16-18.  Plaintiffs' request is clearly inappropriate.  The United States Supreme Court, in the case of *Martin v. Franklin Capital Corp, 546 U.S. 132, 136 (2005)*, enunciated the standard to be applied as follows:

> [T]he standard for awarding fees should turn on the reasonableness of removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for

---

identifies no personal property of his which was allegedly damaged nor any personal injuries  he suffered as a result of the Repositioning Project.  Of course, such deficiency is also fatal to any negligence claim.  *See, e.g., Jones v. Hartford Life and Accident Insurance Company, 443 F.Supp. 2d 3, 7 (D.D.C. 2006)* ("[W]hen the failure to exercise due care creates a risk of economic loss only, and not the risk of personal injury, we have required an 'intimate nexus' between the parties as a condition to the imposition of tort liability.").

[11]    Plaintiffs' suggestion of a conflict between this Court and the District of Columbia Court of Appeals regarding the third party beneficiary claim is misguided.  (See Pl.'s Memo at 7, note 7).  This Court did not conclude that employees of commercial tenants have a cause of action as a third party beneficiary, but merely that the District of Columbia recognizes third party beneficiary claims in contract.  Of course, at the time this Court entered its order in December 2007, it did not have the benefit of the *Fort Lincoln* case in which the District of Columbia Court of Appeals provided further guidance on the law of third party beneficiary claims.

> seeking removal.  Conversely, when an objectively reasonable
> basis exists, fees should be denied.

(Citations omitted).  This Court has recently applied that standard in similarly denying a request

for fees.  See *Breakman v. AOL LLC, 545 F.Supp. 2d 96, 102 (D.D.C. 2008)* (Bates, J.)

The authority cited by Defendants herein abundantly establishes that they have an

objectively reasonable basis for seeking removal.  Accordingly, even in the event this Court

grants Plaintiffs' Motion to Remand, their request for an award of fees should be denied.

WHEREFORE, Defendants request that Plaintiffs' motion to remand be denied and that

even in the event it is granted, Plaintiffs' motion for an award of fees be denied.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

_/S/_____

Dated:  July 10, 2008

Richard W. Luchs, #243931
William C. Casano, #352492
Joshua M. Greenberg, #489323
1620 L Street, N.W., Suite 900
Washington, DC  20036-5605
Telephone:  (202) 452-1400
E-mail:  wcc@gdllaw.com
E-mail:  rwl@gdllaw.com
E-mail:  jmg@gdllaw.com
*Attorneys for Defendants*
*1225 Connecticut Co. LLC and*
*Davis Construction Services, LLC*

# EXHIBIT H

## (EXCERPTS)

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| INDEPENDENCE FEDERAL SAVINGS BANK,<br>  *et al.*, | ) | |
| | ) | |
|     Plaintiffs, | ) | C.A. No.: 0007075-07 |
| | ) | Judge: Jeanette J. Clark |
|     v. | ) | Next Event: |
| | ) |     Proponent's Rule |
| 1225 CONNECTICUT CO., LLC, | ) |     26(b)(4) Statement |
|   *et al.*, | ) |     June 13, 2008 |
| | ) | |
|     Defendants. | ) | |

**PLAINTIFF STANLEY W. PARSONS'S ANSWERS
TO DEFENDANTS 1225 CONNECTICUT CO., LLCS'
FIRST SET OF INTERROGATORIES**

Plaintiff Stanley W. Parsons ("Parsons"), by and through undersigned counsel, hereby answers Defendants' First Set of Interrogatories as follows:

**GENERAL OBJECTIONS**

A.  Plaintiff objects to the Interrogatories to the extent that they seek to impose obligations greater than or in conflict with those established by the Rule of the Superior Court of the District of Columbia.

B.  Plaintiff objects to each definition, instruction and request to the extent that it seeks confidential bank or customer information protected by Federal laws and regulations, including but not limited to the Right to Financial Privacy Act, 35 U.S.C. § 3401, et seq.

C.  Plaintiff objects to the Interrogatories to the extent that they seek information outside the scope of the knowledge of

Based on Mr. Parsons' annual salary, his hourly rate (over 2,080 working hours) is $32.21 per hour. Accordingly, his damages for 36 overtime hours (at time and a half) are $1,739.34.

In addition, damages for nuisance and breach of quiet enjoyment will be an amount to be determined at trial.

**INTERROGATORY NO. 7**: Detail each and every incident in which you claim that your use and quiet enjoyment of your workplace was disturbed and in doing so identify all documents and witnesses supporting your claim.

**ANSWER TO INTERROGATORY NO. 7**:

Please see Answers to Interrogatory Numbers 1, 3-6.

**INTERROGATORY NO. 8**: With respect to your claim for nuisance, do you maintain that a property right of yours has been impaired and, if so, identify or otherwise specify said property right or interest.

**ANSWER TO INTERROGATORY NO. 8**:

Parsons' private use and enjoyment of the premises has been adversely affected by the following:

    a.    the physical condition of the Premises;

    b.    disruption of Parsons' safety, health and comfort;

    c.    creation of significant noise and vibration;

    d.    creation of dirt, debris and dust inside and outside
          the Premises;

    e.    causing the presence of vermin;

29

  f.  failure to take proper precautions to ensure against risks to Parsons from exposure to asbestos, lead, PCB's, dust, bacteria from vermin, or mold spores;

  g.  causing water damage in the Bank and subjecting the computer and other technical operations of the Bank to be at risk of malfunctioning; and

  h.  interfering with the visibility of the Bank from the street and sidewalk.

The noise and vibrations have particularly affected Parsons because of the elevated location of his office, and its partial construction of glass.  The various leaks have particularly affected Parsons because several of them affected IFSB's computers and servers and Parsons is IFSB's Chief Information Officer, responsible for IFSB's computers and servers.  Pursuant to Rule 33(d) of the Superior Court Rules of Civil Procedure, to the extent that non-privileged, responsive documents exist and are in Parsons' possession, custody or control, they will be produced at a mutually agreeable time and place.


**INTERROGATORY NO. 9**:  Identify each person whom you expect to call as an expert witness at trial, state the subject matter on which he is expected to testify, state the substance of the findings and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, and attach to your answers any written report made by the expert concerning those findings and opinions.

**ANSWER TO INTERROGATORY NO. 9**:

  Parsons will identify expert witnesses pursuant to the Superior Court Rules, the Scheduling Order in this case and any

**INTERROGATORY NO. 12**: Detail all health risks to which you were exposed and any incidents of injuries or illnesses experienced by you as a result of the Repositioning Project, and identify all persons with knowledge of those facts and all documents evidencing any such incidents.

**ANSWER TO INTERROGATORY NO. 12**:

Parsons had many generalized concerns about health and safety, and reasonably feared the following:

- hearing loss;

- effects of dust and dirt in the air on breathing;

- asbestos contamination;

- diseases from vermin and mold;

- physical trauma from falling construction debris;

- slipping and falling on puddles of water;

- headaches;

- asthma; and

- inhalation of fumes.

On May 14th, for example, following the evacuation of the bank due to fumes, one employee was transported to the hospital by ambulance after fainting and another employee suffered from a severe headache. Both missed two days of work. On other occasions, various employees have suffered from headaches, coughing or congestion. To date, Parsons has not experienced any effects on his health that have warranted a doctor's visit.

For further information, please see Answers to Interrogatory Numbers 1, 3-6. In addition, pursuant to Rule 33(d) of the

32

Superior Court Rules of Civil Procedure, to the extent that non-privileged, responsive documents exist and are in Parsons' possession, custody or control, they will be produced at a mutually agreeable time and place.

**INTERROGATORY NO. 13**:  State all facts and identify all witnesses and documents supporting your contention that 1225 has breached the Lease.

**ANSWER TO INTERROGATORY NO. 13**:

Please see Answers to Interrogatory Numbers 1-8, 10-12.  In addition, pursuant to Rule 33(d) of the Superior Court Rules of Civil Procedure, to the extent that non-privileged, responsive documents exist and are in Parsons' possession, custody or control, they will be produced at a mutually agreeable time and place.

**INTERROGATORY NO. 14**:  Detail all ways in which you claim that Defendants have failed to take proper precautions to ensure against risks to you and identify all documents and witnesses supporting that claim.

**ANSWER TO INTERROGATORY NO. 14**:

Please see Answers to Interrogatory Numbers 1-8, 10-12.

**INTERROGATORY NO. 15**:  State all facts and identify all witnesses and documents supporting your contention that the parties to the Lease intended to benefit IFSB employees and customers.

**ANSWER TO INTERROGATORY NO. 15**:

33

The foregoing Answers are true to the best of IFSB's knowledge and information.  Executed under the penalties of perjury of the District of Columbia, on the _10_ day of June, 2008.

_Stanley W. Parsons_
Stanley W. Parsons

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INDEPENDENCE FEDERAL SAVINGS BANK, *et al.*,

     *Plaintiffs*,

v.

                                      Case No. 08-cv-963 (JDB)

1225 CONNECTICUT CO. LLC, *et al.*,

     *Defendants*.

## ORDER

Upon consideration of Plaintiffs' Motion to Remand and Motion for Costs and Attorneys

Fees, and Defendants' opposition thereto, it is this _____ day of _____, 2008 hereby:

ORDERED that Plaintiffs' motions will be and hereby are DENIED.

_____
John D. Bates
United States District Court Judge